**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL  NO. H-07-434 |
| | § | |
| | § | |
| BP PRODUCTS NORTH AMERICA INC. | § | |

**MEMORANDUM AND ORDER**

Twelve of the victims who have asked this court to reject the plea agreement between

BP Products North America Inc. and the United States have alleged violations of the Crime

Victims' Rights Act (CVRA), 18 U.S.C. § 3771.  (Docket Entry No. 58).  The victims invoke

the CVRA requirement that a district court must rule "forthwith" on such an assertion, 18

U.S.C. § 3771(d)(3), and ask for an immediate decision.  The victims assert that their rights

to confer under section 3771(a)(5) and to be treated with fairness under section 3771(a)(8)

were violated.  The victims also assert that the government breached its obligation to use its

best efforts to notify them of their subsection (a) rights, as required under section 3771(c)(1).

The victims move this court to reject the plea agreement because of these CVRA violations.

The government has responded to the motion.

This court has carefully considered the victims' motion in light of the extensive

record.  The record includes the motions and briefs filed on behalf of the many individuals

identifying themselves as victims of BP Products's conduct.  This court has also considered

the CVRA, its legislative history, and the cases applying it.  Based on this careful review, this

court finds that on this record, the asserted CVRA violations are not a basis for rejecting the plea agreement.  The reasons for this conclusion are explained in detail below.

This memorandum and opinion does not address the other grounds the victims have urged as a basis for rejecting the plea agreement.  Those will be separately addressed.

## I.    Background

On March 23, 2005, an explosion occurred at the Texas City refinery owned and operated by BP Products North America Inc.  Fifteen died.  Over 170 suffered physical injury.  After the explosion, investigations were conducted by the federal government, including the U.S. Chemical Safety Board and the Occupational Safety and Health Administration.  The Department of Justice investigated.  BP Products conducted an internal investigation.  Civil litigation on behalf of the victims of the explosion and their families followed in state and federal courts.  Approximately four thousand claims were filed.  Approximately half have settled, for a total exceeding $1.6 billion.  Many of the victims who appeared in this case are also plaintiffs in the civil litigation and most of the lawyers representing them are their lawyers in the civil litigation.

### A.    The Challenged Procedure

On October 18, 2007, before any charging instrument was filed, the government filed a sealed *ex parte* motion seeking "an order outlining the procedures to be followed under the Crime Victims' Rights Act."[1]  (Docket Entry No. 54, Ex. 1 at 3).  In that motion, the

---

[1] The sealed *ex parte* motion was filed on October 18, 2007 as a  miscellaneous matter under cause number MC-07-623.  The order was signed by Judge Nancy F. Atlas.  This criminal action, 4:07-cr-00434, was opened on October 22, 2007 and assigned to Judge Gray H. Miller.  Judge Miller recused on November

government informed the court that it was engaged in plea negotiations with BP Products;

that a plea agreement was anticipated to be signed by October 25, 2007; and that the plea was

expected to be entered in late November 2007.  (*Id.* at 2).  The motion stated that due to the

large number of victims in the case, "consulting the victims prior to reaching a plea

agreement would not be practicable."  (*Id.*).  The motion stated that there had been extensive

press coverage of the explosion and subsequent events, so that "notification to the victims

of the mere possibility of a criminal resolution with BP Products North America, Inc., would

result in extensive media coverage."  (*Id.*).  The motion specified why such coverage would

be prejudicial:

> Any suggestion of an admission of criminal responsibility by BP
> Products North America, Inc., prior to the actual signing of a
> plea agreement would serve to prejudice BP Products North
> America, Inc. and could impair the plea negotiation process and
> may prejudice the case in the event that no plea is reached.

(*Id.*).

The government recognized in the motion that the CVRA provides victims a

"reasonable right to confer with the attorney for the Government in the case."  The

government cited the CVRA section stating that "in a case where the court finds that the

number of crime victims makes it impracticable to accord all of the crime victims the rights

described in subsection (a), the court shall fashion a reasonable procedure to give effect to

this chapter that does not unduly complicate or prolong the proceedings."  18 U.S.C.

---

20, 2007.  The case was transferred to Judge David Hitter, who recused on November 27, 2007.  The case
was then assigned to this court.

§ 3771(d)(2).  The government asserted that "a reasonable procedure to give effect to the Crime Victims' Rights Act" was to provide prompt notice to victims and their families of their rights under the CVRA after the plea agreement was signed and to have an extended period before the entry of the plea in the district court assigned to preside over the case.  The government was to send victims notice of their CVRA rights, including information on any hearings; a contact telephone number with updates on the case status; points of contact at the U.S. Attorney's Office and/or the Department of Justice; and "[t]o the extent feasible, updates and case information" through a website and/or the Victim Notification System. (Docket Entry No. 54, Ex. 1 at 3).  The plea hearing would be delayed to ensure that victims could receive notice and fully exercise their rights to attend and be heard.

On the same day the *ex parte* motion was filed on the miscellaneous docket, October 18, 2007, the district court judge issued a sealed order.  (Docket Entry No. 54, Ex. 2).  The court found that "[v]ictim notification prior to the public announcement of a plea agreement is impracticable for the following reasons: (1) The large number of victims impacted by the explosion at the BP Texas City Refinery on March 23, 2005; and (2) Due to extensive media coverage of the March 23, 2005, explosion and its aftermath, any public notification of a potential criminal disposition resulting from the government's investigation into the events surrounding the March 23, 2005, explosion would prejudice BP Products North America, Inc., and could impair the plea negotiation process and may prejudice the case in the event that no plea is reached."  (*Id.* At 2).  The court ordered that "[t]he United States shall not make any notification to the victims of a potential criminal resolution with BP Products

4

North America, Inc., resulting from the explosion at the Texas City Refinery on March 23, 2005, prior to the parties' executing a plea agreement," and that "[i]n the event the United States and BP Products North America, Inc., execute a plea agreement, the United States at that time shall provide reasonable notice to all identifiable victims and afford the victims of the rights set forth [in the CVRA] prior to actual entry of the guilty pleas before this Court." (*Id.*).

On October 22, 2007, the government filed the criminal information. With the information, the government filed a motion to seal, stating that the parties were negotiating the final agreement and that "any disclosure of the information . . . could negatively impact the negotiations." (Docket Entry No. 3). Magistrate Judge Botley signed an order sealing the information. (Docket Entry No. 4).

### B.    The Plea Agreement

On October 24, 2007, the United States and BP Products signed a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). Under the agreement, BP Products would plead guilty to a criminal information charging it with two violations of the Clean Air Act, 42 U.S.C. § 7413(c)(1), which makes it a federal crime knowingly to violate regulations under the Act. BP Products agreed to plead guilty to violating requirements promulgated under section 7412(r)(7) of the Act, including 40 C.F.R. § 68.73(b), which requires the owner or operator of a plant such as the Texas City refinery to establish and implement written procedures to maintain the ongoing integrity of process equipment, and 40 C.F.R. § 68.87(b)(2), which requires the owner or operator of such a plant to warn contractors

5

working on or adjacent to a "covered process" of the known potential fire, explosion, or toxic release hazards related to the contractor's work and the process.  The plea agreement also required BP Products to pay a $50 million fine and to be placed on supervised release for three years.  The day after the United States and BP Products signed the plea agreement, Judge Botley signed an order unsealing the information.  The plea was announced at a press conference that received extensive coverage.

The government mailed three written notices to victims.  These notices specifically advised the victims of the proposed plea agreement, the dates and times of court proceedings, and that the victims had a right to attend and be heard at those proceedings.[2]  On the day the plea agreement was announced, the government set up a telephone number and website that provided current information about the criminal case; established a procedure for submitting victim-impact statements; and made the victim-witness coordinator for the U.S. Attorney's Office for the Southern District of Texas available to answer victims' questions.  These notice efforts by the government were reinforced by the extensive media coverage and by the fact that most of the victims had counsel representing them in civil litigation.

A hearing on the proposed plea agreement was set for November 27, 2007.  On November 16, 2007, the government and BP Products filed a joint motion asking the court

---

[2] On November 2, 2007, the U.S. Attorney's Office mailed written notices to approximately 180 victims, informing them that they had an opportunity to be present and to be heard at the plea and sentencing hearing. On November 16, 2007, the U.S. Attorney's Office sent out another notice, stating the date and time and place of the hearing and requesting confirmation as to whether they wished to attend.  A third notice was sent on January 11, 2008 to inform victims that a hearing on the proposed plea agreement was set for February 4, 2008.  (Docket Entry No. 66 at 13–14).

to waive the presentence investigation and report under Rule 32(c)(1)(A)(ii) of the Federal Rules of Criminal Procedure.  On  November 20, 2007, twelve victims – Alisa and Ralph Dean, Tracy Donaie, Tyrone Smith, Ronald Duhan, Mary Ann Duhan, Michael Jordan, Sandra Thomas, Kelly Porter, Calvin Thomas, and Henry and Maria Rivera – moved through counsel for leave to appear and be heard under the CVRA and asked the court to reject the proposed plea agreement or at least defer and require a presentence investigation.  Nine other victims – Kenneth Grant, George Hardin, Lee Dusek, Jason Wimberly, Liberato Solis, Jorge Patino, Rodolfo Mendoza, Luis Villazana, and Jerett Pahkala – filed a similar motion through counsel on November 23, 2007.  On November 27, 2007, the case was reassigned to this court.

A status conference was held on November 28, 2007.  Counsel for numerous victims appeared and urged that they and their clients be heard in opposition to the proposed plea agreement.  This court granted the requests, allowing the victims to submit extensive information supporting their opposition to the proposed plea agreement.  At the hearing, liaison counsel for the plaintiffs' steering committee in the ongoing state-court civil litigation also agreed to communicate with the other plaintiffs' counsel to be sure that the plaintiffs in those cases were informed of their rights as victims, including the right to attend any hearings and to be heard on the proposed plea agreement and sentence.  (Docket Entry No. 26 at 44). The government worked with counsel handling the many civil cases relating to the explosion, including counsel serving liaison roles in the state-court suits, to give victims notice of their CVRA rights.

Lawyers for the victims filed motions and extensive briefs with supporting materials in opposition to the proposed plea agreement.  One hundred and thirty-four individuals filed victim-impact statements.

At the hearing held on February 4, 2008, BP Products entered a guilty plea under Rule 11(c)(1)(C).  Such a plea includes an agreement as to the sentence that "binds the court once the court accepts the plea agreement."  FED. R. CRIM. P. 11(c)(1)(C); *United States v. Shepard,* 88 Fed. Appx. 44, 45 (5th Cir. 2004).  A court considering whether to accept, reject, or defer decision on a proposed plea agreement under Rule 11(c)(1)(C) may not apply a categorical approach but must make an "individualized assessment." *In re Morgan*, 506 F.3d 705, 711–12 (9th Cir. 2007) (holding that "district courts must consider individually every sentence bargain presented to them and must set forth, on the record, the court's reasons in light of the specific circumstances of the case for rejecting the bargain."); *see also United States v. Smith*, 417 F.3d 483, 487 (5th Cir. 2005) (upholding rejection of a plea bargain when the district court conducted an individualized inquiry).  A court may not accept a Rule 11(c)(1)(C) plea agreement that provides for a sentence above a statutory maximum or below a statutory minimum.  *See United States v. Cieslowski*, 410 F.3d 353, 363 (7th Cir. 2005) (holding that the sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement "must comply with the maximum (and minimum, if there is one) provided by the statute of conviction"); *see also United States v. Greatwalker*, 285 F.3d 727, 730 (8th Cir. 2002) ("Even when a defendant, prosecutor, and court agree on a sentence, the court cannot give the sentence effect if it is not authorized by law.").

The CVRA guarantees crime victims "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C.A. § 3771(a)(4). "[T]he CVRA gives victims the right to speak directly to the judge at sentencing." *United States v. Degenhardt*, 405 F. Supp. 2d 1341, 1345 (D. Utah 2005). At the February 4, 2008 hearing, the court heard from all those present who wanted to speak, whether represented by counsel or not and whether they had previously indicated an intent to appear or not. Ten individuals spoke in open court.[3] The lawyers representing the victims presented arguments on the asserted grounds for asking the court to reject the proposed plea agreement.

At the hearing, the lawyers for the victims acknowledged that they were no longer pressing some of the arguments they had raised in their first motions opposing the proposed plea agreement. The victims acknowledged that they were not arguing that the government had failed to charge the highest possible offense. To the contrary, the victims acknowledged that BP Products had pleaded guilty to the most significant criminal offense that could be charged. (Docket Entry No. 66 at 100–01). The victims also acknowledged that they were no longer asking the court to reject the plea agreement based on the fact that BP Products's

---

[3] Robbie Gracia, whose statement was read by her daughter, Nicole; David Senko; Eva Rowe; attorney Sherry Chandler, who spoke on behalf of Patricia Myles; David Leining; Ronald James Peavy; attorney Edward Mallett, who read a statement from Ralph Dean; Becky Linsenbardt; Robin Soileau; and Jose Montemayor. The following lawyers for victims and victims' groups were present: Edward Mallett and Paul Cassell for the Dean Group; Michael Holley for the Lanier Firm; Sherry Chandler on behalf of the Chandler Law Firm; Tommy Gillaspie on behalf of the Gillaspie Law Firm; Brent Coon and Art Gonzalez on behalf of Brent Coon & Associates, the Liaison Plaintiffs' Steering Committee of the BP Explosion, the general counsel of the United Steelworkers, and Eva Rowe and David Senko; and Tony Buzbee on behalf of Nicole Pina, Robbie Gracia and Jeremy Gracia.

parent corporation was not indicted. (*Id.* at 88–89). The victims also acknowledged that they were no longer asserting as the main source of concern the argument that the plea agreement should be rejected because of the criminal history disclosure. (*Id.* at 94). The victims acknowledged that they were no longer pressing their argument that the plea agreement should be rejected because it improperly "immunized" entities from future prosecution. (*Id.* at 88–89). Instead, the victims focused on three challenges: the fine was too low; the probation conditions were too lenient; and certain CVRA requirements had been violated.

At the conclusion of the February 4, 2008 hearing, the victims' counsel asked for, and were granted, an opportunity to submit additional briefing focused on specific legal issues relating to the proper causation standard and loss definition under the Alternative Fines Act, 18 U.S.C. § 3571(d). The government and BP Products contended that under section 3571(d), losses resulting from the offense could not be used to determine the fine or measure its adequacy. The victims contended that all the losses of the 4,000 individuals caused by the explosion should be used to determine the loss amount under section 3571(d), and that this amount would so far exceed $50 million as to make the proposed plea agreement improperly lenient. The court also granted the victims' request to delay filing their brief until the transcript was prepared and allowed the government and BP Products to file responsive briefing.

In their January 31, 2008 memorandum in opposition to the plea agreement, the victims complained that the government had violated their CVRA right to confer by failing

to respond to two letters one of the victims' attorneys sent after the plea agreement was announced. These letters, sent on December 21, 2007 and January 11, 2008, asked about the basis for determining the $50 million fine.

On February 1, 2008, the government moved to unseal the October 2007 *ex parte* motion and order relating to the CVRA. The government moved to unseal one day after the victims filed their motion asserting that the government had violated the victims' "reasonable right to confer" by failing to respond to the letters. The government argues that it filed the motion to unseal as soon as the victims raised the issue that the government had violated the victims' right to confer. In the motion to unseal the *ex parte* motion and order, the government stated that it had filed the motion "to ensure that victims . . . were provided reasonable notice of plea hearings and sentencing hearings as required by the Act" and "that the government and putative defendant BP Products of North America Inc. could conduct plea negotiations without compromising a pending criminal investigation or potential defendants' rights at a criminal trial," but that "[d]ue to the pending case, it is no longer necessary for the Motion or Order to be sealed." (Docket Entry No. 54, Ex. 3). The court unsealed the motion and order on the same day the motion to unseal was filed. (*Id.*, Ex. 4).

On the day after the February 4, 2008 hearing, the victims filed a motion urging additional CVRA violations as a basis for rejecting the proposed plea agreement. (Docket Entry No. 58). The victims focused on the *ex parte* motion the government filed before it filed the information and before it concluded the plea negotiations with BP Products. The government has responded. (Docket Entry No. 63). This memorandum and opinion

addresses only the victims' assertions that the October 18, 2007 *ex parte* motion and order granting it, and the government's failure to answer the two letters later sent by one of the lawyers representing the victims, violated the CVRA "reasonable right to confer" with the prosecutors and to be treated with fairness and breached the government's obligation to use its best efforts to notify the victims of these rights.

### C.    The Parties' Contentions

The victims assert four specific violations of the CVRA stemming from the government's motion to defer notifying the victims of the proposed plea agreement until after the negotiations had concluded:

1.    The *ex parte* procedure was not authorized by the CVRA and directly violated their rights, including the victims' right to "fairness" under § 3771(a)(8);

2.    Even if the *ex parte* procedure was authorized, the government failed to submit adequate factual information to support the total deprivation of their rights;

3.    Any *ex parte* procedure depriving victims of their rights should have been promptly disclosed to the victims when the need for the *ex parte* procedure disappeared on October 24, 2007, when the parties executed a proposed plea agreement; and

4.    The use of the *ex parte* procedure violated the victims' right to confer about the plea bargain  and the plea bargain reached by the government should therefore be rejected.

(Docket Entry No. 58 at 1–2).  The victims also assert that the government's failure following the announcement of the plea agreement to answer the two letters from a lawyer

representing some of the victims asking about the basis for the fine amount violated their right to confer under the CVRA.  (Docket Entry No. 58 at 3; Docket Entry No. 56 at 2–3).

The victims ask this court for the following relief: a declaration that the *ex parte* procedure in this case violated the CVRA; an order directing the U.S. Attorney's Office to disclose any other *ex parte* contacts regarding victims' rights or the proposed plea agreement; an order directing the U.S. Attorney's Office to reasonably confer with counsel for the victims on issues such as the maximum possible fine; an order directing the U.S. Attorney's Office to allow the victims to "participate in these proceedings in appropriate ways, such as holding an open public meeting in Texas City, Texas, with the victims of the explosion at which the plea bargain could be presented and discussed; reporting to the Court in a timely fashion, such as within 30 days, on the government's compliance with the CVRA"; and an order "rejecting the Plea Agreement that has been presented to the Court."  (*Id.* at 4–5).

The government responds that it filed the *ex parte* motion with the court in October 2007 specifically for the purpose of ensuring that the government complied with the CVRA. (Docket Entry No. 63 at 1–2).  The government asserts that given the stage of the negotiations, the extraordinary publicity the explosion, investigations, and ongoing civil litigation had generated, and the large number of victims, it was necessary to keep the existence and content of plea negotiations confidential to avoid impairing the plea negotiation process and to ensure the ability to provide the defendant a fair trial if the plea negotiations failed.  (*Id.*).  The government asserts that by seeking a court order authorizing a "reasonable procedure" given the combination of the very large number of victims and the

13

extensive media coverage, the CVRA was satisfied, not violated.   (*Id*.).   The government

argues that rejecting the plea agreement is neither necessary nor appropriate.   (*Id.* at 2–3).

## II.     The Crime Victims' Rights Act

### A.      The Statutory Provisions

In 2004, Congress passed the CVRA to give crime victims enforceable rights to

participate in federal criminal proceedings.   The literature on the CVRA describes the

developments that led to its enactment.[4]   The statute was enacted to overcome the effects of

a criminal justice system that had become "out of balance – while criminal defendants have

an array of rights under law, crime victims have few meaningful rights."   *See* 150 Cong. Rec.

S4260, S4262 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein).   The Act was intended

to show that the criminal justice system "can and should care about both the rights of accused

and the rights of victims."   *Id.*   The rights under the statute were described as "basic" and not

"at the expense of defendant's rights."   *Id.*

The CVRA defines a "crime victim" as "a person directly and proximately harmed as

a result of the commission of a Federal offense."   18 U.S.C. § 3771(e).   The CVRA permits

the legal guardians of the crime victim or the representatives of the crime victim's estate,

family members, or other persons appointed as suitable by the court to assume the crime

---

[4]   *See, e.g.,* Douglas E. Beloof, *Weighing Crime Victims' Interests in Judicially Crafted Criminal Procedure*, 56 Cath. U. L. Rev. 1135 (2007); Douglas E. Beloof & Paul G. Cassell, *The Crime Victim's Right to Attend the Trial: The Reascendant National Consensus*, 9 Lewis & Clark L. Rev. 482 (2005); Paul G. Cassell, *Recognizing Victims in the Federal Rules of Criminal Procedure: Proposed Amendments in Light of the Crime Victims' Rights Act*, 2005 BYU L. Rev. 835; The Honorable John Kyl, Steven J. Twist, & Stephen Higgins, *On the Wings of Their Angels: The Scott Campbell, Stephanie Roper, Wendy Preston, Louarna Gillis, and Nila Lynn Crime Victims' Rights Act*, 9 Lewis & Clark L. Rev. 581 (2005).

victim's rights if the victim is under 18 years of age, incompetent, incapacitated, or deceased.

*Id.*

A crime victim has the following rights under the CVRA:

(1)     The right to be reasonably protected from the accused.

(2)     The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused.

(3)     The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding.

(4)     The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding.

(5)     The reasonable right to confer with the attorney for the Government in the case.

(6)     The right to full and timely restitution as provided in law.

(7)     The right to proceedings free from unreasonable delay.

(8)     The right to be treated with fairness and with respect for the victim's dignity and privacy.

18 U.S.C. § 3771(a).

The Act also provides that the government must make its best efforts to "see that crime victims are notified of, and accorded, the rights described in subsection (a)," including

the "reasonable right to confer with the attorney for the Government in the case" and the right to be "treated with fairness."  § 3771(c)(1).[5]

In any "court proceeding involving an offense against a crime victim," the court has the obligation to "ensure that the crime victim is afforded the rights described in subsection (a)."  § 3771(b)(1).  The Act recognizes the need for flexibility in cases in which there are multiple victims, providing that "[i]n a case where the court finds that the number of crime victims makes it impracticable to accord all of the crime victims" their rights under the CVRA, "the court shall fashion a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings."  § 3771(d)(2).

The CVRA states that a violation cannot provide a basis for a new trial.  § 3771(d)(5). "In no case shall a failure to afford a right under this chapter provide grounds for a new trial."  *Id.*  A victim may move to reopen a plea or sentence only if "the victim has asserted the right to be heard before or during the proceeding at issue and such right was denied" or, "in the case of a plea, the accused has not pled to the highest offense charged."  *Id.*  No basis for a damages claim is provided.  The CVRA states that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction."  § 3771(d)(6).

---

[5]  This notice obligation is to 42 U.S.C. § 60207, which provides: "[d]uring the investigation and prosecution of a crime, a responsible official shall provide a victim the earliest possible notice of . . . the status of the investigation of the crime, to the extent it is appropriate to inform the victim and to the extent that it will not interfere with the investigation . . . [and] the filing of charges against a suspected offender."

Enforcement under the CVRA is provided through a motion for relief in the district court, which must decide "any motion asserting a victim's right forthwith."  If the relief sought is denied, the movant may petition the court of appeals for a writ of mandamus, which must decide the petition not only "forthwith," but within 72 hours after it has been filed.  § 3771(d)(3).

### B.    The Appellate Case Law

Many of the appellate cases decided under the CVRA involve the right to attend court proceedings and the right to be "reasonably heard" at hearings on guilty pleas and sentencings.  18 U.S.C. § 3771(a)(4).  In *Kenna v. U.S. District Court for the Central District of California*, 435 F.3d 1011 (9th Cir. 2006), the issue was a district court's decision to limit a victim of a fraudulent scheme to the submission of a written statement at the sentencing hearing.  The appellate court concluded that the statute was ambiguous as to what it meant for crime victims to be "heard" and turned to the legislative history to help resolve the ambiguity.  The court concluded that there was clear Congressional intent to give crime victims the right to speak in person at proceedings covered by the CVRA.  The appellate court held that the district judge had erred, granted the writ of mandamus, and ordered a new sentencing hearing.  In so doing, the court recognized Congress's intent to "make crime victims full participants in the criminal justice system," to ensure that the district court does not "discount the impact of the crime on the victims," to "force the defendant to confront the human cost of his crime," and to "allow the victim 'to regain a sense of dignity and respect rather than feeling powerless and ashamed.'"  *Id*. at 1016; *see also United States v.*

17

*Degenhardt*, 405 F. Supp. 2d 1341, 1351 (D. Utah 2005) (holding that victims had the right to allocute at sentencing).

Other appellate cases address whether victims have a right to copies of the presentence report before the sentencing hearing occurs. Courts have not required victim access to PSRs under the CVRA. *See In re Brock*, No. 08-1086, 2008 WL 268923, at *2–3 (4th Cir. Jan. 31, 2008) (stating that district court did not abuse its discretion in denying the victim access to portions of the PSR because he could meaningfully exercise his right to be reasonably heard without such access); *accord In re Kenna*, 453 F.3d 1136, 1137 (9th Cir. 2006) (holding that neither the CVRA's language nor the legislative history supported a victim's argument that the CVRA confers a general right for victims to access the PSR); *United States v. Citgo Petroleum Corp.*, No. C-06-563, 2007 WL 2274393, at *2 (S.D. Tex. Aug. 8, 2007) ("[T]he [CVRA] does not require the disclosure of presentence investigation reports or other documents of a similar nature."); *United States v. Sacane*, No. 3:05cr325(AHN), 2007 WL 951666, at *1 (D. Conn. March 28, 2007) ("Courts have consistently held that a crime victim does not have the right under the CVRA to obtain information contained in a presentence report."); *United States v. Ingrassia*, No. CR-04-0455ADSJO, 2005 WL 2875220, at *17 (E.D.N.Y. September 7, 2005) ("The statute no more requires disclosure of the pre-sentence report to meet its remedial goal of giving crime victims a voice in sentencing than it does disclosure of all discovery in a criminal case to promote the goal of giving victims a voice at plea proceedings. Accordingly, on the current record, and in light of the privacy interests of defendants and possibly victims as well that might otherwise be implicated, I see no need

to recommend that the court now require disclosure to all victims of any portion of the pre-sentence investigation report").  The Fourth Circuit has held that the CVRA does not support a victim's right to intervene in the criminal process for the purpose of obtaining discovery for use in civil litigation.  *United States v. Moussaoui*, 483 F.3d 220 (4th Cir. 2007) (reversing district court's order granting victims access to all the government's information turned over to defense counsel in discovery in the criminal case).

Appellate cases have also addressed the CVRA's provision granting crime victims the "right not to be excluded" from public court proceedings.  18 U.S.C. § 3771(a)(3).  This provision requires a district judge to permit victim–witnesses to attend a trial or hearing unless the judge determines by clear and convincing evidence that it is highly likely that the victim–witness may alter his or her testimony as a result of hearing others testify.  A court must also consider whether there are "reasonable alternatives" that would enable the victim–witness to attend the trial and avoid exclusion.  *In re Mikhel*, 453 F.3d 1137 (9th Cir. 2006); *see also United States v. Patkar*, No. 06-00250 JMS, 2008 WL 233062, at *6 (D. Haw. Jan. 28, 2008) ("The CVRA itself provides no exceptions to the rights afforded, other than a balancing test that the court must apply in determining whether to exclude a victim from a public proceeding."); *United States v. L.M.*, 425 F. Supp. 2d 948, 957 (N.D. Iowa 2006) (holding that crime victims had a right to attend public court proceedings, but not a hearing that was closed to the public); *United States v. Turner*, 367 F. Supp. 2d 319, 332 (E.D.N.Y. 2005) (noting that the "right not to be excluded" is "phrased in the negative ( i.e., the crime victim has the right 'not to be excluded') rather than as an affirmative right to

attend," a phrasing that guards "against arguments that the government has some affirmative duty to make it possible for indigent or incarcerated victims to be present in the courtroom," and that "[t]he negative phrasing also suggests that the fact that a properly notified victim cannot be present is not in itself a circumstance that requires a proceeding to be adjourned. Essentially, a judge conducting a public proceeding involving a crime may not close the courtroom door to a crime victim who seeks entry but has no obligation to ensure the victim actually arrives there.").

The appellate cases emphasize that the CVRA rights are broad and expansive but subject to express statutory limits, such as prosecutorial discretion, and to express qualifiers, such as the "*reasonable* right to confer," the right to be "*reasonably* heard," and the right to proceed "free from *unreasonable* delay." The cases also emphasize the flexibility provided in the multiple-victim section. The cases faced with applying the CVRA to specific facts and circumstances carefully examine whether the approach taken or proposed in fact achieved the purposes of the CVRA.

## III.   The Alleged Violations

### A.   The Right to Notice Under Section 3771(a)(2)

In their most recent motion, the victims do not focus on an argument about notice they raised earlier. But because that argument asserts a CVRA violation, it is addressed here. In that argument, the victims questioned whether the notices the government mailed to victims advising of the court hearings set in November 2007 and February 2008 and giving information about the victims' right to attend and be heard satisfied section 3771(a)(2).

Three such mailings were sent.  The government also set up a website and a telephone number, and made the victim–witness coordinator available.   The notices sent by the government of public proceedings were supported by the fact that most of the victims were already represented by lawyers who had or were pursuing civil litigation against BP Products.  These lawyers assisted in providing notice to victims of their right to appear and speak at court proceedings.[6]   The record shows that the government's notice of public

---

[6]  The following exchange took place at the November 28, 2007 hearing:

MR. PERRY:  Your Honor, I don't have any reason to believe that there are any other groups of victims that are likely to make an appearance that would not be willing to coordinate with and work through us. I know that the U.S. Attorney's Office sent out letters to a number of people which they thought was giving notice but I think they may very well have been overlooked. And I would be concerned about attempts to create artificial deadlines.  We will work very hard from our side to prevent that issue from becoming a problem and I don't have any reason to think that it would be a problem.

MR. McINTYRE:  And, Your Honor, also if the victims' group has victims that they think haven't received adequate notice or actual notice, if they'll provide us with a list of those victims, we will be glad to attempt to contact those people via e-mail.  We have a website set up where they can download a victim impact statement.  We have a person answering the phone, also.

MR. PERRY:  I would make the suggestion that almost all of these victims are represented by counsel and that those attorneys generally keep up with their addresses and sending notices to their counsel might be very helpful.

THE COURT:  Do we know who counsel are for all of those victims?

MR. McINTYRE:  No, Your Honor –

THE COURT:  You do.

MR. PERRY:  BP knows who counsel is for every one of those individuals.

MR. McINTYRE:  Well, Your Honor, I mean, I guess my position would be --

THE COURT:  It's the government's obligation, however, to issue the notices under the statute, right?

MR. McINTYRE:  Right. And all I'm saying, if he has people that he thinks hasn't gotten notice or we haven't done an adequate job, tell us who to send them to and we'll do it.

THE COURT:  Do you have a list?

MR. PERRY:  I do not have a list.  I will say that of the people I represent, none of them remembered having received a notice.  Although, since I have now seen the letter, I can understand how they might have missed it.  But I will – we will work with the government – we will work with the government to try to make sure that they have effectively complied with their obligation.

MR. McINTYRE:  And one of the other things, Your Honor, is this was a very publicized agreement. There was a press conference by DOJ and the U.S. Attorney's Office.  We obviously believe that any plaintiffs' attorney that represented plaintiffs in the civil litigation would become aware of the criminal resolution, obviously communicate that to their clients, not that we're relying on that, but that's something that should and would happen with the victims' counsel.

proceedings met the requirements of section 3771(a)(2).  *See, e.g.*, *United States v. Purdue Frederick Co.*, 495 F. Supp. 2d 569, 572 n.4 (finding notice adequate because it was effective even though, in contrast to present case, no mail notice was sent); *United States v. Ingrassia*, 392 F. Supp. 2d 493, 496 (E.D.N.Y 2005) (affirming magistrate judge's report finding that the notices sent did not meet § 3771(a)(2) requirements because no notices were mailed to victims).

The right to "reasonable notice" under section 3771(a)(2) is expressly tied in subsection (a)(2) to "any public court proceeding . . . involving the crime."  The legislative history makes clear that this right applies to public court proceedings, specifically excluding, for example, grand jury proceedings.  *See* 150 Cong. Rec. S4260, S2468 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein).  It is also limited by the right of a court to order judicial proceedings to be closed under "existing laws."  The legislative history states that the CVRA was not intended to alter such laws.  *Id.*

There is no right to notice under section 3771(a)(2) of the filing of an information or of the existence of plea negotiations.  Neither is a "public proceeding."  A court filing is not the same as a "public proceeding" under section 3771(a)(2) of the CVRA.  The term

---

THE COURT:  I suspect a lot of those cases have already been resolved.
MR. McINTYRE:  That is true, Your Honor.
MR. GONZALEZ:  Your Honor, to be on the safe side, I am the liaison counsel for the plaintiff steering committee in the civil litigation for all the ongoing cases.  I will represent to the Court that I will immediately go back to my office and communicate with all the other plaintiffs' counsel and communicate with their – to make sure that there are no other stragglers, so to speak . . . .
MR. McINTYRE:  That would be fantastic.
(Docket Entry No. 26 at 42-44).

"proceeding," as used in the CVRA, appears to refer to such events as hearings held in open court rather than filings on the court's docket.  *See, e.g.*, § 3771(a)(3) (the right not to be excluded from a public court proceeding at which testimony is presented); § 3771(a)(4) (the right to be "reasonably heard" at a public proceeding in the district court involving release, plea, sentencing, or parole); *Kenna v. District Court*, 435 F.3d at 1015 ("When Congress used the word 'public' in [§ 3771(a)(4)] it most likely meant to refer to proceedings in open court – much as the word is used in the common phrase 'public hearing.'").

The notices of the right to appear and be heard at court proceedings met the section 3771(a)(2) requirements.  The violation of the right to notice that the victims' latest motion asserts is not a violation of section 3771(a)(2), but rather of the government's obligation under section 3771(c)(1) to use its best efforts to provide notice of the subsection (a)(5) right to confer with the government and of the subsection (a)(8) right to be treated with fairness.

### B.     The "Reasonable Right to Confer"

The "reasonable right to confer" under subsection (a)(5) is tied to the "case."  A threshold issue is the relationship of this right and the related notice obligation under section 3771(c)(1) to the period before a charging instrument is filed.  The CVRA states that the "rights described in subsection (a) shall be asserted in the district court in which a defendant is being prosecuted for the crime or, *if no prosecution is underway*, in the district court in the district in which the crime occurred."  18 U.S.C. § 3771(d)(3) (emphasis added).  There are clearly rights under the CVRA that apply before any prosecution is underway.  For example, the right to be "reasonably protected from the accused" is not tied to a "proceeding" or

"case."  The right to reasonable notice of "any release or escape of the accused" is not tied

to a "proceeding" or "case."  The right to be treated with fairness and with respect for the

victim's dignity and privacy may apply with great force during an investigation, before any

charging instrument has been filed.  The government's obligation to give victims notice of

their rights under subsection (a) can apply before any charging instrument is filed, depending

on which subsection (a) right is at issue and the circumstances involved.

The legislative history makes it clear that, like other CVRA rights, the right to confer

was intended to be broad.  In a floor statement relating specifically to the right to confer,

Senator Feinstein, one of the CVRA's sponsors, stated that the right to confer was "intended

to be expansive," applying to "any critical stage or disposition of the case."  *See* 150 Cong.

Rec. at S4260, S2468 (daily ed. Apr. 22, 2004).  But the legislative history also reflects the

clear limit recognized in the CVRA that it does not limit prosecutorial discretion.  Decisions

on whether to charge, who to charge, and what to charge, are all in the prosecutor's

discretion.   *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting

*Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *Deal v. United States*, 508 U.S. 129, 134

n.2 (1993) (referring to "the prosecutor's universally available and unavoidable power to

charge or not to charge an offense.").  The following statement is part of the legislative

history:

> This right to confer does not give the crime victim any right to
> direct the prosecution. Prosecutors should consider it part of
> their profession to be available to consult with crime victims
> about concerns the victims may have which are pertinent to the
> case, case proceedings or dispositions. Under this provision,

> victims are able to confer with the Government's attorney about
> proceedings *after charging*.

150 Cong. Rec. S4260,  S4268 (daily ed. Apr. 22, 2004) ( statement of Sen. Kyl) (emphasis

added).  This statement appears to contemplate that victims have a statutorily protected right

to "confer" with the government *after* a charging instrument has been filed.

The briefs have not cited cases addressing whether the CVRA requires prosecutors

to "confer" with victims before any charging instrument is filed.[7]  The cases, the legislative

history, and the Attorney General's Manual appear to recognize the right to "confer" as

generally applying to any critical stage or disposition of the "case," including plea

negotiations.  *See Heaton*, 458 F. Supp. 2d at 1272; *Ingrassia*, 2005 WL 2875220, at *17

n.11; U.S. DEPARTMENT OF JUSTICE, ATTORNEY GENERAL GUIDELINES FOR VICTIM AND

WITNESS ASSISTANCE 30 (2005) ("Responsible officials should make reasonable efforts to

notify identified victims of, and consider victims' views about, prospective plea

negotiations.").  In most cases resolved by a guilty plea, the plea is entered well after the

indictment is filed.  In the present case, by contrast, in addition to the issues raised by the

number of victims and the intense media coverage, the information was filed just two days

before the plea agreement was reached.  No source has been cited that addresses how the

---

[7] Several courts have held that the CVRA defines "victim" in a way that only applies after a charging instrument is filed.  *See, e.g., Turner*, 367 F. Supp. 2d at 326 (explaining why, despite a contrary statement in the legislative history, the actual language of the CVRA appeared to exclude victims of uncharged conduct from those covered by the CVRA); *Searcy*, 2007 WL 1875802, at *6 (noting cases that interpret the definition of "victim" to require the existence of a charging instrument); ATTORNEY GENERAL GUIDELINES FOR VICTIM AND WITNESS ASSISTANCE 9 (defining a "victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense, . . .if the offense is charged in Federal district court.").  This reading of "victim" appears inconsistent with the CVRA recognition of certain subsection (a) rights that apply during investigation, before any charging instrument is filed.

CVRA "conferral" right and related notice obligation should apply when there is no charging instrument and the defendant agrees to plead guilty to an information that is filed a few days before the agreement is reached.

Indeed, there are few cases addressing the conferral provision at all.  In *In re W.R. Huff Asset Management Co.*, 409 F.3d 555 (2d Cir. 2005), the appellate court considered a district court's orders entered in a case relating to the prosecution of the Rigas family for fraud arising out of the finances of Adelphia.  The victims had civil claims pending against the members of the Rigas family.  The government entered into a settlement agreement with members of the Rigas family who had not been convicted.  Under the agreement, these nonconvicted family members agreed to forfeit certain assets, the government agreed not to prosecute the corporation, and victims who wanted to receive restitution from a fund established by Adelphia or from forfeited assets had to comply with certain requirements, including releasing claims against these family members.  The court ordered that any person who wanted to be heard about the proposed settlement make a written submission.  The government took steps to ensure broad notice to victims, including holding a press conference about the proposed settlement, setting up a website with information about the proposed settlement, and providing contact information for the victim coordinator in the U.S. Attorney's Office.  The court accepted the settlement after a hearing at which objectors were heard.  Certain of the victims filed a mandamus petition, asserting that the settlement violated their CVRA rights to be treated fairly and to be provided with full and timely restitution.  The victims also challenged the notice given as inadequate under the CVRA.  Finally, the victims

argued that they were not afforded an opportunity "to confer" with the government

concerning the case disposition. The court of appeals rejected the fairness and restitution

arguments, stating as follows:

> the CVRA does not grant victims any rights against individuals
> who have not been convicted of a crime. Concomitantly, neither
> the Government nor the sentencing court are restricted by the
> CVRA from effecting reasonable settlement or restitution
> measures against non-convicted defendants. To the extent that
> the Government recognizes that victims would have difficulty
> in effecting any recoveries from the Rigas family members
> because of difficulties in proof of culpability and because of
> security interests affecting the family's assets, petitioners cannot
> meet their burden in showing that the Government or the district
> court acted unreasonably in entering the Settlement Agreement
> or approving it. Additionally, the district court in no way treated
> the victims unfairly or without "respect for [their] dignity and
> privacy," 18 U.S.C. § 3771(a)(8), but rather took into
> consideration the numerosity of victims, the uncertainty of
> recovery, and the prospect of unduly prolonging the sentencing
> proceedings when adopting the settlement, factors which
> Congress has required the court to consider. *See* 18 U.S.C.
> § 3771(d)(2).

*Id.* at 564.

The court then turned to the allegation that the government had violated the CVRA

conferral obligation. The court noted that "no petitioner has alleged that it asked the

Government to confer with it and was denied the opportunity to do so." (*Id*. at 564). In the

present case, of course, the victims' argument is that the reason they did not ask to confer

with the government on the proposed plea agreement is that the government improperly

obtained an *ex parte* order to keep the plea negotiations secret. And the lawyer for some of

the victims also alleges that after the plea agreement was disclosed, he did ask the

27

government for an explanation of how the $50 million fine was derived but received no response.  The *Huff* court's conclusion is not, however, linked to, or limited by, the absence of any request by victims to confer with the government and the resulting absence of any refusal to do so.  The *Huff* court stated:

> Nothing in the CVRA requires the Government to seek approval from crime victims before negotiating or entering into a settlement agreement.  The CVRA requires only that the court provide victims with an opportunity to be heard concerning a proposed settlement agreement, and the court provided the victims with a full opportunity to do so in this case.

*Id*. at 564.

In *United States v. Heaton*, 458 F. Supp. 2d 1271, the court held that the right to confer applies to a motion to dismiss charges involving a specific victim filed by the government under Rule 48(a).  Such a motion is dispositive.  The court stated that in ruling on such a motion in a victim-related case, "a prosecutor must recount that the victim has been consulted on the dismissal and what the victim's views were on the matter."  *Id*. at 1273.  The court construed the right to confer with the government as a mechanism to give the government information about the victim's views so that the government could provide that information to the court, necessary to treat the victim with fairness.

Other courts have similarly emphasized that one purpose of the "confer" requirement is to enable the victims to obtain information on which to base views to express to the court. In *United States v. Ingrassia*, 2005 WL 2875220, a fraud case involving approximately 200

potential victims, the court concluded that the CVRA "right to be heard" did not require the disclosure to all victims of any part of the presentence investigation report.  The court described the CVRA right to be "heard" as a right for victims to provide information and opinions to the court and the CVRA right to confer as one way to realize the right to be heard.  "To the extent victims might wish to obtain information on which to base their input, the contemplated mechanism for doing so was conferral with the prosecutor rather than the implicit creation of an affirmative disclosure right." *Id*. at *17 n.11.  The same conclusion was reached in *In re Sacane*, 2007 WL 951666, in which the court considered a request by fraud victims to obtain more detailed financial disclosures in advance of a hearing on restitution.  The victims relied on the CVRA conferral right.  The court held that this right did not provide a basis for the crime victims to obtain information directly from the defendant.  Instead, the court held that crime victims seeking additional information from the defendant must work through the government using the right to confer.  The court noted that the conferral right was limited by section 3771(d)(6), which states that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id.* at *2.  The court noted that even if it had the discretion to order the defendants to turn over financial information to the crime victims, ordering this would be repetitive and unnecessary because the government had served the defendants with subpoenas seeking the same financial information. *Id*.  In *United States v. Sharp*, 463 F. Supp. 2d 557 (E.D. Va. 2006), the court examined whether the right to notice and confer was violated.  The court rejected the claim in part because the record showed that there had been

29

"extensive and ongoing communication" between the individual and the government.  *Id*. at 568.

As described in these cases, the purposes of the conferral provision are to ensure that victims can obtain information from prosecutors and convey information to prosecutors, to enable the victims to form and express opinions.  Conferring with prosecutors allows victims to obtain information necessary to form and communicate the victims' views to the court. *See Heaton*, 458 F. Supp. 2d at 1273;  *Ingrassia*, 2005 WL 2875220, at *17 n.11; *see also* 150 Cong. Rec. S2460, S4268 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein) ("The victims of crime . . . should be able to provide any information, as well as their opinion, directly to the court concerning the . . . plea, or sentencing. . . . Of course, in providing victim information or opinion it is important that the victim be able to confer with the prosecutor concerning a variety of matters and proceedings.").  Other sources support the victims' argument that a purpose of the conferral right is also to allow victims to express their views on proposed dispositions, including plea negotiations, for the prosecutors to consider.  *See* ATTORNEY GENERAL GUIDELINES FOR VICTIM AND WITNESS ASSISTANCE 30 (2005).  Section 3771(c)(1) requires government officials to use best efforts to give victims notice of their rights under subsection (a), including the right to confer, at a time that will enable the victims to exercise these rights meaningfully.

Even under an expansive approach, the reasonable right to confer on a proposed plea agreement and the government's obligation to provide notice of that right is subject to the

30

limit that the CVRA not impair prosecutorial discretion.  The right to confer is not a right to approve or disapprove a proposed plea in advance of the government's decision.  *See In re W.R. Huff Asset Management Co., LLC*, 409 F.3d at 564.  The right to confer is a right to obtain and provide information and to express opinions.  The right to confer about a proposed plea and the obligation to provide notice of this right are also subject to the multiple-victim provisions.

### C.     The Right to Fairness

The CVRA also provides that victims have the "right to be treated with fairness."  18 U.S.C. § 3771(a)(8).  As one court has noted, although "[n]either the text of the statute nor its legislative history provides guidance as to what specific procedures or substantive relief, if any, Congress intended this provision to require or prohibit," and although "[t]he provision's broad language will undoubtedly lead to litigation over the extent to which courts must police the way victims are treated inside and outside the courtroom," the Senate sponsors of the law were clear in their articulation of the overall import of the provision: to promote a liberal reading of the statute in favor of interpretations that promote victims' interest in fairness, respect, and dignity.  *See Turner*, 367 F. Supp. 2d at 335–36.  "It is not the intent of this bill that its significance be whittled down or marginalized by the courts or the executive branch.  This legislation is meant to correct, not continue, the legacy of the poor treatment of crime victims in the criminal process."  *See* 150 Cong. Rec. S4260, S4269 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein).  In *Turner*, the court applied section

31

3771(a)(8) "liberally to the extent consistent with other law."  367 F. Supp. 2d at 335.  In

*United States v. Heaton*, 458 F. Supp. 2d at 1272, the court similarly emphasized the need

for a robust reading of the rights afforded by the CVRA, finding that section 3771(a)(8)

requires the court to consider the views of a victim before giving leave of court to dismiss

an indictment under Federal Rule of Criminal Procedure 48(a).  The court cited the

legislative history addressing section 3771(a)(8):

> The broad rights articulated in this section are meant to be rights
> themselves and are not intended to just be aspirational.  One of
> these rights is the right to be treated with fairness.  Of course,
> fairness includes the notion of due process. . . . This provision
> is intended to direct government agencies and employees,
> whether they are in executive or judicial branches, to treat
> victims of crime with the respect they deserve and to afford
> them due process.

*Id.* at 1272 (citing 150 CONG. REC. S10910 (daily ed. Oct. 9, 2004)); *see also United States*

*v. Kaufman*, 2005 WL 2648070, at *4 (D. Kan. Oct. 17, 2005) ("[T]he court finds that 18

U.S.C. § 3771(a)(8) requires that sketch artists' activities in the courtroom be restricted under

the circumstances of this case."); *United States v. Patkar*, 2008 WL 233062, at *4–6

(upholding government's argument that order keeping information confidential was justified

by the need to protect victims' CVRA right to be treated fairly and with respect for privacy).

The reasonable right to confer with the government and the government's obligation

to use its best efforts to provide notice of this right are not only a right and an obligation, but

also mechanisms through which the CVRA guarantees victims' right to fairness.  The

reasonable right to confer and the obligation to provide notice of that right must be read

expansively in light of the CVRA's broad goal of ensuring that victims are treated fairly.  *See Heaton*, 458 F. Supp. 2d at 1272 ("When the government files a motion to dismiss criminal charges that involve a specific victim, the only way to protect the victim's right to be treated fairly and with respect for her dignity is to [have the court] consider the victim's views on the dismissal.").

## IV.   The Procedure Used in this Case

The victims argue that the government acted improperly in asking a district court judge, *ex parte*, to use the multiple victims provision to delay notifying the victims of the proposed plea.  The government argues that the *ex parte* motion filed on October 18, 2007 and the order were necessary, given the large number of potential victims and the extraordinary publicity the possibility of a criminal resolution would create.

The scant case law does not support the argument that the procedure of asking a court *ex parte* for approval of a proposed approach for complying with the CVRA when multiple victims are involved, based on a need to maintain confidentiality, violates the CVRA.  In *United States v. Ingrassia*, 2005 WL 2875220, at *9,  the court held that the government did not seek, but should have sought, advance permission from a court to use a method other than mail (regular or electronic) to satisfy section 3771(a)(2).  The government relied on the multiple-victim provision of section 3771(d)(2).  The court rejected reliance on this section as a basis for unilateral action by the government:

> The statute allows reliance on an alternate "reasonable procedure" in lieu of full compliance with subsection (a)(2) only

where "the court finds" that full compliance is impractical – and thus forbids a unilateral decision by the government to give up on strict adherence. *Id.* § 3771(d)(2). Moreover, the "reasonable procedure" that the statute permits must be one that "the court shall fashion." *Id.* Accordingly, even if [the notice system] does constitute "a reasonable procedure to give effect to this chapter that does not unduly complicate or prolong the proceedings," *id.,* the government could not properly rely on it to accomplish victim notification without advance permission from the court, which it did not secure in this case.

The latter interpretation of the CVRA not only respects the statute's text, it also reflects a sensible procedure for the administration of criminal justice for two reasons. First, the statute imposes on the judiciary an independent obligation to "ensure" that victims are afforded their rights. *Id.* § 3771(b). Requiring that a court make a finding of need and then fashion (or at least approve) an alternate "reasonable procedure" for notification plainly makes it more likely that the judiciary will meet its own statutory obligation. Second, a substitute "reasonable procedure" for notification that is crafted by the government alone without the court's input may later be found – as it is here – to be insufficient, resulting in a finding that victims have not been afforded their rights. In such circumstances, providing a full remedy to the aggrieved victims (such as vacating the results of the improperly conducted proceeding and seeking to re-do it later on proper notice) either may not be possible or, if possible, may have adverse consequences for law enforcement. By requiring judicial approval in advance of any reliance on a substitute procedure pursuant to subsection (d)(2), the statute guards against such problems.

*Id.*

The government did not violate the CVRA by seeking judicial permission for the approach it wanted to take to giving notice to the victims, and which included delaying notice until after the charging instrument was filed and after the plea negotiations had concluded.

34

The CVRA contemplates judicial supervision over a procedure used under section 3771(d)(2).  Filing a motion *ex parte* because of a need for confidentiality is not in itself improper.

The victims have not specifically contended that the government acted improperly in asking the magistrate judge to seal the information on October 22, 2007.  Nor have the victims cited cases in which victims – as opposed to defendants – challenge a prosecutor's decision to file a charging instrument under seal.  Long-established rules and case law recognize that there can be legitimate reasons to file charging instruments under seal.  Rule 6(e)(4) states that an indictment may be kept secret until the defendant is in custody or has been released pending trial.  FED. R. CRIM. P. 6(e)(4).  The circuit courts have recognized that an indictment may be sealed for legitimate prosecutorial purposes or when the public interest otherwise requires it.[8]

---

[8]   *See United States v. Thompson*, 287 F.3d 1244, 1248 (10th Cir. 2002) (conducting further investigation into criminal charges and avoiding influencing an ongoing civil suit and the appearance that the government prosecuted the defendant in retaliation for filing the civil litigation against the government were not legitimate reasons to seal an indictment); *United States v. Sharpe*, 995 F.2d 49, 52 (5th Cir. 1993) (holding that an indictment was properly sealed: "1) in an effort to accommodate counsel for [one of the defendants]; (2) in order to locate Sharpe; and (3) out of concern for pre-trial publicity before all the defendants would be notified"); *United States v. Richard*, 943 F.2d 115, 118–19 (1st Cir. 1991) (holding that concerns about the defendants fleeing and excessive trial publicity were legitimate reasons to seal an indictment); *United States v. Lakin*, 875 F.2d 168, 170 (8th Cir. 1989) (holding that the need to gather additional evidence to determine whether the case in which the indictment was filed should be prosecuted was a legitimate reason to seal an indictment); *United States v. Ramey*, 791 F.2d 317, 321 (4th Cir.1986) (holding that protecting witnesss's safety and insulating them from undue influence and preventing defendants from fleeing are legitimate reasons to seal an indictment); *United States v. Edwards*, 777 F.2d 644, 648 (11th Cir. 1985) ("[R]easons other than taking defendants into custody validly support the sealing of an indictment."); *United States v. Southland Corp.*, 760 F.2d 1366, 1379–80 (2d Cir. 1985) (holding that it is permissible to seal an indictment to make it easier to obtain complete and truthful testimony from a potential defendant who is granted immunity).

The victims' and the government's primary dispute is whether the combined presence of multiple victims and intense media coverage was a sufficient factual basis for the court to enter the *ex parte* order allowing notice to the victims of plea negotiations to be deferred until the negotiations concluded.  The victims assert that the government had no constitutional obligation to protect BP Products's right to a fair trial in the event the plea negotiations failed because "'there is no constitutional right to plea bargain.'" (Docket Entry No. 65 at 4).  The victims assert that if there was a choice between protecting the rights of the crime victims or the rights of BP Products, the CVRA required the government to side with the victims.  (*Id.*). Finally, the victims argue that even if confidentiality of the plea negotiations was required, the procedure the court approved in the October 18, 2007 order was not adequately supported and was overbroad.

To the extent the victims are arguing that neither BP Products nor the government had a legitimate interest in confidentiality during the plea negotiations, that argument proves too much.  Plea bargaining has long been recognized as an essential component of the administration of justice.  "Properly administered, it is to be encouraged." *Santobello v. New York*, 404 U.S. 257, 260 (1971).  "If such a policy is to be fostered, it is essential that plea negotiations remain confidential to the parties if they are unsuccessful." *United States v. Verdoorn*, 528 F.2d 103, 107 (8th Cir. 1976).  Rule 11(f) of the Federal Rules of Criminal Procedure, amended in 2002, provides that "[t]he admissibility or inadmissibility of a plea,

a plea discussion, and any related statement is governed by Federal Rule of Evidence 410."[9]

Under Rule 410, "evidence of the following is not, in any civil or criminal proceeding,

admissible against the defendant who made the plea or was a participant in the plea

discussions: (1) a plea of guilty which was later withdrawn; (2) a plea of nolo contendere;

(3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules

of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas;

or (4) any statement made in the course of plea discussions with an attorney for the

prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty

later withdrawn."[10]

Under Rule 11(f) and Rule 410, guilty pleas later withdrawn, or statements made to

government attorneys in the course of plea discussions that do not result in a guilty plea or

that result in a guilty plea later withdrawn, are inadmissible in subsequent proceedings.  The

purpose of the rule is "to permit the unrestrained candor which produces effective plea

discussions."  *United States v. Mezzanatto*, 513 U.S. 196, 214 (1995) (quoting advisory

committee notes); *accord United States v. El-Sayegh*, 131 F.3d 158, 159–60 (D.C. Cir. 1997)

(reversing district court judge's order releasing plea agreement after it had been repudiated,

---

[9] Rule 11(f) is a relatively new provision, enacted in 2002 as part of a "general restyling of the Criminal Rules."  FED. R. CIV. P. 11 advisory committee's note.  Before 2002, the section of Rule 11 that dealt with the inadmissibility of pleas and plea discussions was now-deleted subsection Rule 11(e)(6), which contained language identical to that which remains in Rule 410.

[10] Much of the legislative history and case law relevant to these two rules refers to Rule 11(e)(6) rather than Rule 11(f), and most case law refers to Rule 11(e)(6) and Rule 410 interchangeably. *United States v. Stein*, No. CR. 04-269-9, 2005 WL 1377851, at *6–7 (E.D. Pa. June 8, 2005).

the defendant had pleaded not guilty, and the government had moved to dismiss indictment, without prejudice, based on the need for confidentiality of plea negotiations); *United States v. Grant*, 622 F.2d 308, 312 (8th Cir. 1980); *United States v. Davis*, 617 F.2d 677, 683 (D.C. Cir. 1979); *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1148 (2d Cir. 1978); *United States v. Robertson*, 582 F.2d 1356, 1364–67 (5th Cir. 1978).  There is no "constitutional right to plead guilty," but there is a recognized interest in plea negotiations, which may require confidentiality.  The courts recognize that "[e]xploring possible plea negotiations is an important part of providing adequate representation of a criminal client."  *Mannhalt v. Reed*, 847 F.2d 576, 582 (9th Cir. 1988) (citing *Holloway v. Arkansas*, 435 U.S. 475 (1978)).

The victims also argue that the government and BP Products had no need to delay notice of the proposed plea  to protect BP Products's right to a fair trial in the event the plea negotiations failed.  An accused – individual or corporate – has a Sixth Amendment right to a fair trial.  The courts have long recognized an obligation on the part of district courts to take affirmative steps necessary to protect a criminal defendant's right to a fair trial untainted by prejudicial media exposure.  *See Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) ("The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences."); *United States v. Brown*, 218 F.3d 415, 425 (5th Cir. 2000) (quoting *Sheppard*); *Levine v. U.S. Dist. Court for Cent. Dist. of California*, 764 F.2d 590, 596 (9th Cir.1985) (holding that the Supreme Court "unequivocally imposed a duty upon trial courts to take affirmative steps to insure the fairness of a criminal proceeding in the face of excessive publicity"); *United States v. Elfgeeh*, Nos. 06-0638-cr(L), 06-0744-

cr(con), 2008 WL 383046, at *38 (2d Cir. Feb. 14, 2008) (quoting *Sheppard*); *Hale v. Gibson,* 227 F.3d 1298, 1332–33 (10th Cir. 2000) (quoting *Sheppard*).   Courts have limited the public's right to access to judicial records, protected by the First Amendment, when it collides with the defendant's right to a fair trial, protected by the Sixth Amendment.   *See Press-Enterprise Co. v. Superior Court of Cal., Riverside County*, 464 U.S. 501, 508 (1984); *In re Providence Journal Co., Inc*. 293 F.3d 1, 13 (1st Cir. 2002).

In the present case, the district court order granting the *ex parte* motion made specific findings that: there was a need to maintain confidentiality until the plea negotiations were concluded in order to protect the negotiations and to protect the defendant's right to a fair trial in the event no agreement was reached; and that the large number of victims and the extraordinary media coverage meant that it was impracticable for the victims to be given notice of the potential criminal resolution before public announcement of a plea agreement. Neither the number of victims nor the extensive media coverage is disputed.   The number of victims was not presented to show that it was difficult to provide them notice, but rather to show that it would be impracticable for the government to consult with them before a plea agreement was reached and to show that providing the victims notice would widely publicize the plea negotiations, destroying any confidentiality about BP Products's willingness to plead guilty.   The court found a cognizable threat to the plea negotiations and to the defendant's Sixth Amendment right if the negotiations failed, which required the use of the flexibility the CVRA affords in cases involving multiple victims.   The court order ensured full notice under

the CVRA and a full opportunity to communicate information and views before and during the entry of the plea.

The victims argue that even if the district court had a proper basis to allow the government to delay notifying and consulting with the victims about the plea agreement, the court erred in failing to devise a narrower procedure. But there were significant problems in devising alternatives given the lack of clarity as to how the CVRA right to confer and the notice of that right applied in these unusual circumstances. There was no charging instrument on file, a large number of victims and others affected by the explosion, and a history of extraordinary publicity. The victims suggest that the court should have picked a few lawyers representing some of the victims in the civil cases and directed the government to give them notice of the proposed plea agreement and to solicit reaction from them, subject to some confidentiality orders. But it is unclear how the court would have picked which lawyers and victims to include without any involvement by the victims, and unclear how confidentiality could be reliably achieved.

The government should have provided information in the October 18, 2007 motion showing that it considered and rejected alternatives and why. If there was an in-court hearing when the *ex parte* motion was submitted, that hearing should have been on the record for later review. And when the government obtained the court order unsealing the information, it should have unsealed the motion and order filed on October 18, 2007 in light of the fact that there was no longer a need for confidentiality. *See* 150 Cong. Rec. S4260, S4268 (daily

ed. Apr. 22, 2004) (statement of Sen. Kyl).  At that point, the need for the seal had ended.
But the issue is not whether the procedure used was the best, but rather whether it is a basis
for rejecting the plea because it deprived victims of CVRA rights.

The court's October 18, 2007 order made specific findings that justified the use of the
procedure under the CVRA.  The order made it clear that after the proposed plea agreement
and information were made public, the victims would be given notice of their CVRA rights
and the hearing on the proposed plea agreement and sentence would be deferred so that the
victims could fully exercise their rights to attend and be heard.  That procedure was followed
and the well-represented victims have taken full advantage of the rights afforded.  The
victims received and provided extensive information and fully presented their views on the
proposed plea agreement before it was entered in this court.  The October 18, 2007 order did
mean that the victims could not inform the prosecution of their views about the specific terms
of the proposed plea agreement *before* it was signed.  Given the unusual circumstances,
however, this order did not frustrate the purposes of the CVRA's conferral provision.  The
purpose of the conferral right is, as noted, not to give the victims a right to approve or
disapprove a proposed plea in advance or to participate in the plea negotiations. The purpose
of the reasonable right to confer is for victims to provide information to the government,
obtain information from the government, and to form and express their views to the
government and court.  *See In re W.R. Huff Asset Management Co., L.L.C.*, 409 F.3d at 564*;
In re Sacane*, 2007 WL 951666, at *2; *Ingrassia*, 2005 WL 2875220, at *17 n.11; 150 Cong.
Rec. S4260, S4262 (daily ed. Apr. 22, 2004) (statement of Sen. Feinstein).

In this case, the record shows that the unusual circumstances of the presence of multiple victims and the intense media coverage made it impracticable for the victims to receive notice of the plea negotiations and to confer with the government before the negotiations concluded.   The record also shows that the government had been in communication with many of those affected by the explosion well in advance of any plea negotiations.  (Docket Entry No. 26 at 31–32; Docket Entry No. 63 at 5).  The government's extensive investigation had allowed it to learn much from the victims before any plea negotiations.  The government knew before it agreed to the plea that the families of those who died, the individuals injured in the explosion and their families, and others affected by the explosion, had strong views that BP Products should receive the maximum available punishment.  The government had the victims' opinions about the need for a criminal charge and a severe sanction.  To read the right to confer as an inflexible right to express an opinion on specific terms that the government and defendant are negotiating would both endanger the confidentiality of plea negotiations and suggest that crime victims have a right to join in plea negotiations and to approve the proposed terms, inconsistent with the CVRA recognition of prosecutorial discretion.

In addition to the extensive communications between the government and the victims during the investigation,  the victims have been provided a full opportunity to express their views on the proposed plea agreement in court.  The hearings were set to maximize the opportunity for victims to attend and speak.  Full opportunity was provided for victims to submit written statements.  The victims' lawyers have filed extensive briefs and supporting

materials, ensuring that their clients' CVRA rights are fully realized.  The victims have been provided with ample opportunity to obtain information about the plea agreement, to provide information, and to make their views known to both the government and to this court.  The victims asked this court to order a "town meeting" as a way to remedy the CVRA violations they assert.  The process that has been followed is an orderly approach to such a town meeting, in the context of court hearings.

The victims have argued that the procedure used deprived them of the opportunity to provide the government with information about their losses, which the government could have used to determine the fine amount.  The victims do not identify other information that has not been discussed in the many briefs and extensive supporting motions filed on behalf of the victims, the numerous victim-impact statements, and the testimony of the victims in court.  Whether that specific loss information is needed depends on how this court resolves the issues of the loss definition and the causation standard applicable under the Alternative Fines Act, 18 U.S.C. § 3751(d).  If this court determines that the proposed plea agreement must be rejected because the fine was inadequate, given the maximum fine available under the Alternative Fines Act, the fact that the victims did not have an opportunity to confer with the government in advance of the plea and provide detailed loss information may be an additional reason supporting rejection.  That issue will be addressed in a separate memorandum and opinion.  On the present record, the fact that the victims did not have the opportunity to provide specific loss information to the government before the plea agreement was reached is not a basis to reject that plea agreement.

The victims also argue that the CVRA was violated when the government failed to respond to two letters sent by victims' counsel requesting information regarding how the fine amount was calculated.  As a matter of good practice, the government should have responded to those requests.  *See* 150 Cong. Rec. S4260,  S4268 (daily ed. Apr. 22, 2004) (statement of Sen. Kyl) ("Prosecutors should consider it part of their profession to be available to consult with crime victims about concerns the victims may have which are pertinent to the case, case proceedings or dispositions.").  However, that information was provided at the lengthy hearing held on February 4, 2008 and the briefing that followed.  The victims have had  a full opportunity to express their views about whether this court should reject the plea agreement because the fine is inadequate.  The government's failure to answer the letters does not support the rejection of the plea agreement.

## V.      Conclusion

The asserted CVRA violations are not in themselves a basis for rejecting the plea agreement between BP Products and the government.  The government is ordered to disclose any other *ex parte* contacts concerning the CVRA.  The other grounds asserted for rejecting the plea agreement will be addressed in a separate memorandum and opinion after the briefing is concluded.

SIGNED on February 21, 2008, at Houston, Texas.

Lee H. Rosenthal

Lee H. Rosenthal
United States District Judge

44